# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| BERNARD M. CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:06-0250 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's Application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 433. Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings filed on July 7, 2006 (Document No. 11.), and Defendant's Motion for Judgment on the Pleadings filed on August 3, 2006 (Document No. 13.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Bernard M. Campbell (hereinafter referred to as "Claimant"), initially filed an Application for DIB on June 3, 2004, alleging disability as of October 21, 2001, due to "extreme vertigo/dizziness; problems with focusing eyes; shortness of breath; difficulty sleeping; depression; nervousness; headaches, back and leg pain; significant weight gain." (Tr. at 57 - 59, 69.) The claim was denied initially and upon reconsideration. (Tr. at 33 - 35, 40 - 42.) Claimant requested a hearing before an ALJ (Tr. at 47.), and the hearing was held on August 16, 2005, before the Honorable John T. Yeary. (Tr. at 321 - 367.) By Decision dated September 15, 2005, ALJ Yeary determined that Claimant was not entitled to benefits. (Tr. at 17 - 26.) Claimant requested review of the ALJ's

Decision, and the ALJ's decision became the final decision of the Commissioner on February 3, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 7 - 9.) On April 4, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (1999). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of

substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (1999). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c).[1] Those sections provide as follows:

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06, provides essentially the same framework for determining the severity of anxiety related disorders.

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> 
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> 
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> 
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R.

4

§§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. at 25, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of "obesity, history of vertigo, affective disorder, and anxiety-related disorder". (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's medically determinable impairments did not meet or medically equal the level of severity of any listing in Appendix 1, Subpart P, Regulation No. 4. (Id., Finding No. 4.) The ALJ then found that Claimant had "the residual functional capacity to perform the exertional demands of sedentary work. He can never climb ladders, ropes, or scaffolds and can never balance. He can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He should avoid all exposure to hazards. He should avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, and industrial pollutants. He is limited to work with no public contact and limited supervisor/co-worker contact and to work

involving simple, repetitive tasks." (Id., Finding No. 6.) Thus, the ALJ concluded that Claimant could perform a significant range of sedentary work. (Tr. at 26, Finding No. 11.) The ALJ found that Claimant could not perform any of his past relevant work. (Tr. at 25, Finding No. 7.) The ALJ determined that Claimant was a "younger individual" with a college education and a Masters Degree from Marshall University and no transferable skills. (Id., Finding Nos. 8 - 10.) Nevertheless, the ALJ concluded that Claimant could perform jobs including work as a surveillance system monitor and bench assembler which existed in significant numbers in the regional and national economy. (Tr. at 26, Finding No 12.) On this basis, benefits were denied. (Tr. at 26.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is not in conformity with all applicable legal standards and supported by substantial evidence.

Claimant's Background

Claimant was born on February 21, 1966, and was 39 years old at the time of the administrative hearing, August 16, 2005. (Tr. at 57, 327.) Claimant has a college education. (Tr. at 75, 329.) In the past, he worked as a cable installer, dispatcher and instructor's assistant. (Tr. at 18, 70, 330 - 335.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant essentially contends that the Commissioner's decision is not supported by substantial evidence because ALJ Yeary committed error at steps four and five of the sequential analysis.[2] (Document No. 12.) Claimant states as follows:

> The Administrative Law Judge disregarded the opinion of the plaintiff's treating physicians without citing any persuasive contradictory evidence.
> \* \* \*
> The Administrative Law Judge cited no objective medical evidence, only the opinions of the non-examining reviewing physicians, and an impartial vocational expert who testified at the hearing to support his assessment of mental and physical

---

[2] The record contains the September 13, 2004, Residual Functional Capacity Assessment – Physical of Dr. Amy B. Wirts (Tr. at 240 - 248.), the February 28, 2005, Residual Functional Capacity Assessment – Physical of Dr. Rogelio Lim (Tr. at 271 - 279.) and the August 1, 2005, Medical Assessment of Ability to do Work-Related Activities (Physical) of Dr. Sanjay Meltza (Tr. at 307 - 311.) At the August 16, 2005, administrative hearing, Claimant testified that he had not seen Dr. Meltza. Rather, he saw Ms. Tammy Campbell, a family nurse practitioner and his aunt, who worked under Dr. Meltza. (Tr. at 336 - 337.) The ALJ gave significant weight to Dr. Wirt's assessment because he found it supported by substantial evidence of record and gave Dr. Lim's assessment no significant weight because Dr. Lim found Claimant able to do light work when substantial evidence supported a finding that Claimant was capable of sedentary work. The ALJ gave no weight to Dr. Meltza's assessment in view of Claimant's testimony that he had not seen him. (Tr. at 23.)

7

residual functional capacity.

* * *

The Administrative Law Judge's decision fails to give substantial weight to the opinion of Doctor Hasan whose opinion is supported by his opportunity to examine and treat the plaintiff on numerous occasions and by appropriate clinical findings without any explanation beyond a statement that 'they are not supported by his own clinical notes' without citing any examples which support his conclusion. We are left to speculate as to his reasons.

The Commissioner responds that the ALJ properly considered and evaluated the opinions of Claimant's treating physicians and substantial evidence supports his decision. (Document No. 13.)

ANALYSIS

Regulations establish a framework for determining the weight to be given to the opinions of medical sources respecting the nature and severity of claimants' impairments and residual functional capacities. Generally speaking with respect to medical opinions respecting the nature and severity of a Claimant's impairments, the ALJ gives more weight to opinions of treating physicians than to those of examining and non-examining physicians. 20 C.F.R. § 404.1527. As between the opinions of examining and non-examining physicians, the ALJ will generally give more weight to the opinion of examining physicians. 20 C.F.R. § 404.1527(d)(1). Opinions of medical experts are accorded the same treatment as that given non-examining sources. 20 C.F.R. § 1527(f)(2)(iii).

The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). In evaluating the opinions of treating physicians, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2)(2000). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v.

8

Chater, 924 F. Supp. 53, 55(W.D.Va. 1996); see also, 20 C.F.R. 404.1527(d)(2)(2000). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2)(2000). Ultimately, it is the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. Oppenheimer v. Finch, 495 F.2d 396,397 (4th Cir. 1994).

Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A.), reiterates the standard for considering medical opinions of treating sources stating when the ALJ must adopt the opinions of treating sources on the issue(s) of the nature and severity of claimants' impairments as follows:

> The [regulatory] provision recognizes the deference to which a treating source's medical opinion should be entitled. It does not permit us to substitute our own judgment for the opinion of a treating source on the issue(s) of the nature and severity of an impairment when the treating source has offered a medical opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.

According to SSR 96-2p, the medical opinions of treating sources must be given controlling weight when they meet four factors: (1) they must be opinions of "treating sources"; (2) they must be "medical opinions", i.e., opinions about the nature and severity of claimants' impairments; (3) the ALJ must find them "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; and (4) even if well-supported, the opinions must be "not inconsistent" with the other "substantial evidence" in the individual's case record. SSR 96-2p states further as follows:

> It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not.

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2) - (6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2003). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996). The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2003).

> In determining what a claimant can do despite his limitations, the SSA must consider
> the entire record, including all relevant medical and nonmedical evidence, such as a

> claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). No "special significance" is given to medical source opinions, including treating source opinions, with respect to issues reserved to the Commission. See 20 C.F.R. § 404.1527(e)(1) - (3). Medical source opinions respecting such issues must nevertheless be considered based upon the factors set forth at 20 C.F.R. § 404.1527(d)(2) - (6) as set forth above. See Social Security Ruling 96-5p ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d).")

Having determined a claimant's residual functional capacity and found that the claimant cannot perform his past relevant work, the ALJ must consider whether the claimant is disabled under the Vocational Guidelines or, to the extent that non-exertional limitations are presented, submit a hypothetical question to a vocational expert respecting the existence of work in the regional and national economies which the claimant can perform. To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and the ALJ must present a hypothetical question which fairly sets out all of the claimant's impairments and abilities. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments and limitations, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the

hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The United States Court of Appeals for the Fourth Circuit has stated that in Social Security cases, "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to *all* of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (emphasis added). Quoting its decision in a prior case, the Court stated as follows:

> The courts . . . face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

Id. at 236 (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).

The record contains the August 3, 2004, Psychological Evaluation of Lisa C. Tate, M.A. (Tr. at 206 - 210.) Ms. Tate found Claimant alert and oriented; depressed in mood; mildly restricted in affect; logical and coherent in thought processes; fair in insight; within normal limits in judgment and immediate, recent and remote memory; and within above normal limits in

attention/concentration. She found Claimant's social functioning "[m]ildly deficient as he was appropriate and related fairly well. He was cooperative, responsive and maintained fair eye contact. Observed mood was depressed with mildly restricted affect." (Tr. at 209.) Ms. Tate diagnosed depressive disorder NOS and panic disorder with agoraphobia. (Id.)

The record reveals that Gail Kinsey, M.A., of New River Health Association, Inc., saw Claimant for counseling and completed a Mental Health Services Adult Assessment on August 9, 2004. (Tr. at 256 - 261.) Claimant was scheduled to see Dr. M. K. Hasan on August 26, 2004, for a medication/psychiatric evaluation. (Tr. at 257.) The record contains documents indicating Dr. Hasan's treatment of Claimant from August, 2004, through August, 2005. (Tr. at 251, 253 - 255, 296 - 298, 312.) Dr. Hasan diagnosed "major depression, recurrent moderate to moderate severe in nature and adjustment disorder with anxious and depressed mood secondary to physical illness and situational factors." (Tr. at 253.) Dr. Hasan prescribed Paxil, Ativan and Topamax. Dr. Hasan completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on June 16, 2005. (Tr. at 304 - 306.) Dr. Hasan opined that Claimant had fair ability to follow work rules; interact with supervisor(s); function independently; understand, remember and carry out simple job instructions; and maintain personal appearance. Dr. Hasan opined that Claimant had poor ability to relate to co-workers; deal with the public; use judgment; deal with work stresses; maintain attention/concentration; understand, remember and carry out complex and detailed but not complex job instructions; behave in an emotionally stable manner; relate predictably in social situations and demonstrate reliability.

Dr. James Binder completed Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms on September 3, 2004. (Tr. at 221 - 239.) Indicating that he had

examined Ms. Tate's August, 2004, Psychological Evaluation (See Tr. at 233.), Dr. Binder found that Claimant had medically determinable affective and anxiety-related disorders. (Tr. at 224 and 226.) Dr. Binder found that Claimant had mild restriction of activities of daily living and difficulties in maintaining concentration, persistence or pace; moderate difficulties in maintaining social functioning; and no episodes of decompensation. (Tr. at 231.) Dr. Binder found that the evidence did not establish the presence of the "C" criteria of Listings 12.04 and 12.06. (Tr. at 232.) Dr. Debra Lilly completed Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms on March 6, 2005. (Tr. at 280 - 293.) It appears that Dr. Lilly examined Ms. Tate's and Dr. Hasan's findings in making her assessments. (See Tr. at 292.) Dr. Lilly indicated that Claimant's mental impairments were not severe. (Tr. at 280.) As Dr. Binder, Dr. Lilly found that Claimant had a medically determinable affective disorder, depression (Tr. at 283.), and a medically determinable anxiety-related disorder, panic attacks (Tr. at 285.). Dr. Lilly found that Claimant had mild restrictions of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace and no episodes of decompenation. (Tr. at 290.) Dr. Lilly found, as Dr. Binder had, that the evidence did not establish the presence of the "C" criteria of Listings 12.04 and 12.06. (Tr. at 291.)

At the August 16, 2005, administrative hearing, ALJ Yeary first asked vocational expert Mr. Casey Vass about Claimant's past relevant work and then asked him to assume "an individual of the same age, education and work experience as the Claimant with the residual functional capacity to perform sedentary level exertional work. Further assume that this individual can never climb ropes, ladders or scaffolds or balance. This individual can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl. This individual should avoid all exposure to hazards; should avoid

concentrated exposure to temperature extremes, vibration, and fumes, and industrial pollutants." (Tr. at 364 - 365.) The vocational expert testified that jobs existed in the regional and national economies which the individual could perform such as surveillance system monitor, bench assembler and telephone solicitor. The ALJ then stated "[g]o back to hypothetical number one and add to it that this individual requires work with no public contact, limited supervisor and co-worker contact, and work involving simple repetitive tasks." (Tr. at 365.) The vocational expert testified that the individual could not perform the telephone solicitor job but could perform the surveillance system monitor and bench assembler jobs. (Id.) The ALJ further asked the vocational expert to assume that the individual could not concentrate consistently for an eight-hour workday or perform work involving even simple repetitive task. (Id.) The vocational expert responded that there would be no work for the individual. (Tr. at 366.) The ALJ also asked the vocational expert to assume the limitations found by Dr. Hasan, and the vocational expert stated that there were no jobs which the individual could perform. (Id.)

In his September 15, 2005, Decision, ALJ Yeary summarized the evidence from Ms. Tate's psychological evaluation and Dr. Hasan's treatment records respecting Claimant's mental impairments in reaching his conclusion at step two of the sequential analysis that Claimant had severe affective and anxiety-related disorders. (Tr. at 19 - 20.)[3] Considering Claimant's mental impairments under Listings 12.04 and 12.06, the ALJ stated as follows respecting Claimant's mental impairments (Tr. at 20 - 21, Citations to Exhibits omitted.):

---

[3] In summarizing evidence pertaining to Dr. Hasan's treatment of Claimant, ALJ Yeary stated Claimant's symptoms and Dr. Hasan's diagnosis and noted Dr. Hasan's findings during the course of his treatment that Claimant was doing "fair", "having a hard time coping", "continued to do rather poorly" and "was doing marginally well." The ALJ also stated that Dr. Hasan found that "[o]n examination, the claimant was alert and oriented. There was no evidence of psychosis or thought disorder." (Tr. at 20.)

> The claimant's affective disorder and anxiety-related disorder meet the requirements of the 'A' criteria of Sections 12.04 and 12.06 of the Listings, but the 'B' criteria are not met. With regard to the 'B' criteria, the undersigned finds the claimant has mild restrictions of activities of daily living (takes care of own personal needs, able to do some cooking, and does some household chores); moderate difficulties in maintaining social functioning (attends church, talks on telephone to friends but only on a monthly basis, and reportedly mostly stays at home and does not get much interaction); mild difficulties in maintaining concentration, persistence, or pace (watches television, reads the Bible, plays the guitar, and uses the computer); and no episodes of decompensation."
>
> Moreover, state agency physicians who reviewed the mental and physical aspects of the claim at the initial and reconsideration levels did not find that the claimant's impairments met or equaled any of the Listings.

In determining Claimant's residual functional capacity, ALJ Yeary stated that he gave significant weight to Dr. Binder's assessment "as it is consistent with the evidence of record." (Tr. at 22.) The ALJ gave "no significant weight to Dr. Lilly's assessment "as it is inconsistent with other credible evidence of record." (Id.) Respecting Dr. Hasan's assessment, the ALJ stated that Dr. Hasan's findings that Claimant's ability in certain categories was poor was not supported by his own clinical notes and gave Dr. Hasan's assessment no significant weight. (Id.) The ALJ further stated that he gave Dr. Hasan's opinion that Claimant was disabled no significant weight because "his opinion is based on both physical and mental problems and the physical problems are out of his area of expertise. In addition, the finding of disability is an issue reserved for the Commissioner (SSR 96-5p)." (Tr. at 23.)

The Court finds Plaintiff's assertion that ALJ Yeary failed to provide adequate explanation for his conclusions that the RFC assessments of Dr. Hasan and others were and were not in conformity with evidence of record meritorious. The ALJ does not state how he reached his conclusions as required by the applicable rulings and regulations. It is not the function of the Court to conduct an analysis of the evidence and discern from the record how the ALJ did so. The Court

cannot find that the ALJ's decision is supported by substantial evidence in view of his conclusions without explanation respecting medical source opinions respecting Claimant's RFC. The ALJ's analysis at steps four and five is affected. For these reasons, the Court finds that this matter must be remanded for further proceedings including consideration of the RFC assessments of Dr. Hasan and others medical sources and the issuance of a further decision in conformity with applicable rulings and regulations.

After a careful examination of the evidence of record, the Court finds that the Commissioner's decision that Claimant is not entitled to DIB is not in conformity with all applicable legal standards and supported by substantial evidence of record. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, the final decision of the Commissioner is **VACATED,** and this matter is **REMANDED** to the Commissioner for further proceedings including the preparation of a administrative decision in conformity with all applicable legal standards, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide a copy of this Order to counsel of record.

ENTER: March 14, 2007.

                                                R. Clarke VanDervort
                                                United States Magistrate Judge